IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JUDITH DIANE GIBSON,

    Plaintiff,

v.            CIVIL ACTION NO. 5:11-cv-00374

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

MEMORADUM OPINION AND ORDER
ADOPTING PROPOSED FINDINGS AND RECOMMENDATION

  This is an action seeking review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act (SSA), 42 U.S.C. §§ 1381-1383f. By Standing Order entered May 25, 2011 (Document 4), this action was referred to United States Magistrate Judge R. Clarke VanDervort for proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

  Plaintiff, Judith Diane Gibson, filed an application for SSI on November 16, 2007, alleging disability as of January 1, 2007, due to "chronic anxiety disorder, panic attacks, hypertension, back problem, degenerative disc disease, type 2 diabetes, chest pain, Bell Pals[]y, high cholesterol, anemia, and leg/feet edema." (Tr. at 18, 158-65, 180, 184.) Plaintiff's claims were denied initially and, also, upon reconsideration. On September 23, 2010, Plaintiff had a hearing before the Honorable Michelle Wolfe, Administrative Law Judge ("ALJ"). On

November 12, 2010, the ALJ determined that Plaintiff was not entitled to benefits. The Appeals Council subsequently denied Plaintiff's request for review. Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

Pending before the Court are Plaintiff's *Motion for Judgment on the Pleadings* (Document 10) and Defendant's *Motion for Judgment on the Pleadings* (Document 11). On August 6, 2012, Magistrate Judge VanDervort submitted his *Proposed Findings and Recommendation* ("PF&R"), wherein it is recommended that the Court (1) deny Plaintiff's motion; (2) grant Defendant's motion; (3) affirm the final decision of the Commissioner; and (4) dismiss this matter from the Court's docket. (Document 17 at 30-31.) Along with the PF&R, and the parties' cross motions for judgment on the pleadings, the Court has reviewed *Plaintiff's Objections to Proposed Findings and Recommendation of the U.S. Magistrate Judge* (Document 18) and *Defendant's Response to Plaintiff's Objections to the Magistrate Judge's Proposed Findings and Recommendation* (Document 20).

## I.     APPLICABLE LAW

Disability under the SSA is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). The Social Security Administration utilizes a five-step inquiry to determine eligibility for social security benefits. The steps are followed in order, and if a claimant is determined not to be disabled at one step, the evaluation proceeds to the next step. *See Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005). ). The PF&R correctly lays out the five-step inquiry as follows:

> The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id*. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2010). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

(Document 17 at 2-3.)

## II. STANDARD OF REVIEW

The Federal Magistrates Act requires a district court to make a *de novo* review upon the record of any portion of the proposed findings and recommendations to which written objections have been made. 28 U.S.C. § 636(b)(1); *see also* Fed.R.Civ.P. 72(b). Conversely, a district court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (holding that districts courts may adopt proposed findings and recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006). A district court's authority to choose among these options is independent of the statutory duty to afford

review to those portions to which objections are addressed. *See Camby*, 718 F.2d at 199-200 ("If no objections were made, for example, it could hardly be argued that the judge must accept the [magistrate judge's] report if it contained an error of law apparent on its face."). As such, it is wholly within the district court's discretion to accept, reject, or modify a magistrate judge's proposal irrespective of any objections by the parties. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980). Coinciding with district courts' discretion under the Federal Magistrates Act is the responsibility to ensure the just disposition of matters referred to magistrate judges. *See Mathews v. Weber*, 423 U.S. 261, 271 (1976); *see also Raddatz*, 447 U.S. at 683.

Section 405(g) of the SSA provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .[.]" 42 U.S.C. § 405(g) (2012). This language limits the Court's role in reviewing the ALJ's decision to determining whether his findings are supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

"Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)). Substantial evidence has also been held to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hays*, 907 F.2d at 1456 (citing *Richardson*, 402 U.S. at 401). In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438

4

F.2d 1157, 1157-58 (4th Cir. 1971). When the Commissioner's decision clearly disregards the overwhelming weight of the evidence, the Court may modify or reverse the decision. *Id.*

### III. ANALYSIS

*A. ALJ Findings of Fact and Conclusions of Law*

The ALJ determined Plaintiff satisfied the first inquiry because she had not engaged in substantial gainful activity since the application date. (Tr. at 20, Finding No. 1.) Under the second inquiry, the ALJ found Plaintiff suffered from major depressive disorder, generalized anxiety disorder, degenerative joint disease of the bilateral knees, obesity, diabetes, and provisional borderline intellectual functioning, which were severe impairments. (*Id.*, Finding No. 2.) However, under the third inquiry, the ALJ found Plaintiff's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21, Finding No. 3.) The ALJ concluded Plaintiff had a residual function capacity

> to perform light work as defined in 20 CFR 416.967(b) except she is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing, but never on ladders, ropes or scaffolds. She should avoid concentrated exposure to cold and heat, vibrations and hazards. She could not perform complex jobs, but can do simple routine tasks. She would be limited to low stress jobs, defined as only occasional decision making and occasional changes in the work setting, working with things rather than people and occasional interaction with co-workers.

(Tr. at 24, Finding No. 4.) Under the fourth inquiry, the ALJ found Plaintiff had no past relevant work. (Tr. at 34, Finding No. 5.) Under the fifth inquiry, based on the Vocation Expert testimony, the ALJ concluded Plaintiff could perform jobs such as a hand packer, machine off bearer, and house cleaner, at the light level of exertion. (Tr. at 34, Finding No. 9.) Thus, the ALJ denied benefits. (Tr. at 35, Finding No. 10.)

### B. Medical Records

#### 1. Mental Impairments

Plaintiff was evaluated in January of 2008 by Michael A. McDaniel, M.A., a licensed psychologist, for the purposes of determining whether she was entitled to a medical card from the West Virginia Department of Health and Human Resources ("DHHR"). (Tr. at 384-92.) Plaintiff reported to Mr. McDaniel that she had a sixth grade education and problems with anxiety, panic attacks, and depression. (*Id.*) Mr. McDaniel diagnosed major depressive disorder, panic disorder, and borderline intellectual functioning. (Tr. at 392.) Intellectual testing revealed a full scale IQ of 58, a verbal score of 55, and a performance score of 66. (Tr. at 391.) Mr. McDaniel opined that Claimant was functioning at a level significantly below average. (*Id.*)

On February 14, 2008, Elizabeth Durham, M.A., a licensed psychologist, performed a mental status examination. Plaintiff reported she dropped out of school after sixth grade and she reported sleep difficulties, a fair appetite, crying episodes, a dysphoric mood, anxiety, panic attacks, and an inability to be around a crowd of people. (Tr. at 355-56.) She diagnosed major depressive disorder, recurrent, moderate; and generalized anxiety disorder. (Tr. at 357.) Ms. Durham determined Plaintiff's social functioning, persistence, and pace were within normal limits, and she was capable of managing her finances. (Tr. at 358.) On September 20, 2008, Ms. Durham reported Plaintiff had normal thought processes and content, fair insight, normal judgment and memory, and normal concentration. Ms. Durham conducted an IQ test, which Plaintiff attained a verbal IQ score of 58, a performance score of 52, and a full scale score of 51. (Tr. at 409.) However, Ms. Durham concluded the test was invalid because Plaintiff did not put forth much effort and gave up easily. Ms. Durham also noted the Plaintiff passed her written driving test after four attempts. Ms. Durham administered a Wide Range Achievement Test 4

("WRAT4"), which indicated Plaintiff read and spelled at a kindergarten level and performed math at a first grade level. (Tr. at 410.) However, Ms. Durham opined that these results were invalid. (*Id*.)

Dr. Jeff Harlow, Ph.D., a licensed psychologist, completed a form Psychiatric Review Technique ("PRT") on February 29, 2008, wherein he found Plaintiff suffered from depressive and anxiety disorders which were non-severe impairments that resulted in no functional limitations. (Tr. at 360-73.)

On March 14, 2008, Dr. H. Hoback Clark, M.D., a reviewing psychiatrist, under contract with the DHHR, completed a form Mental Disability/Incapacity Evaluation, wherein she found Plaintiff had a mental impairment that met or equaled the listing of impairments that made her mentally disabled. (Tr. at 385-86.) However, Dr. Clark did not elaborate on checking the box that she met or equaled a listed impairment.

Dr. Timothy Saar, Ph.D., a licensed psychologist, completed a form PRT on October 2, 2008, wherein he opined that depression and anxiety were non-severe impairments . (Tr. at 413-26.) Dr. Saar concluded the mental impairments resulted in mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, and pace, but no episodes of decompensation of extended duration. (Tr. at 423.)

Upon request of Plaintiff's counsel, Mari Sullivan Walker, M.A., a licensed psychologist, conducted a psychological evaluation and intellectual testing on May 21, 2010. (Tr. at 497-506.) Ms. Walker noted that Plaintiff complained of nervousness, excessive worry, anxiety, depression, irritability, crying spells, a desire to be left alone, cries easily, an aversion of noises, an aversion to crowds, trouble concentrating, difficulty in making decisions, a loss of interest in pleasurable activities, and panic attacks. (Tr. at 497-98.) Plaintiff reported to Ms. Walker that

7

she was held back first grade, dropped out after sixth grade, and participated in special education classes. Plaintiff told Ms. Walker that she doesn't visit friends or relatives, and that she does not attend church. (*Id.*) An intelligence exam showed a full scale IQ score of 50, a verbal comprehension IQ of 61, a perceptual reasoning IQ of 52, a working memory IQ of 60, and a processing speed score of 50. (Tr. at 500.) During the exam, Ms. Walker noted that Plaintiff understood directions, put forth a good effort, but poorly planned her approach to tasks. Walker opined that Plaintiff's full scale IQ fell in the extremely low classification of functioning. (Tr. at 506.) Ms. Walker concluded that Plaintiff read at a 2.4 grade level, spelled at a 2.3 grade level, and performed math at a 2.2 grade level (Tr. at 502.) Ms. Walker diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic features; generalized anxiety disorder; panic disorder with agoraphobia; dyssomnia NOS; rule out posttraumatic stress disorder; and rule out mild mental retardation. (Tr. at 505.) In conclusion, Ms. Walker determined that Plaintiff is incapable of sustaining gainful employment, even light or sedentary in nature, because of her intellectual function, academic achievement and her psychological symptoms. (Tr. at 506.)

Plaintiff was treated by Dr. Hasan, a psychiatrist and neurologist, starting in February 2008. Plaintiff reported that she had trouble coping with her husband's death. (Tr. 387.) Plaintiff indicated an increased level of anxiety, nervousness, and anxiousness. (*Id.*) Plaintiff stated that she completed the fifth grade and never worked. (Tr. at 388.) Dr. Hasan observed that Plaintiff was cooperative and pleasant, was alert and oriented, her mood was not so good, dysphoric affect, had fair to partial judgment and insight, exhibited an increased level of anxiety and psychomotor activity, and was of average intelligence. (*Id.*) He diagnosed major depressive disorder, panic disorder, and bereavement, and assessed a GAF of 50. (*Id.*) Dr. Hasan recommended antidepressant therapy, counseling, and a mood stabilizing medication. (*Id.*) On

October 15, 2008, Dr. Hasan indicated Plaintiff continued to show symptoms of anxiety and depression, but he found the medication seemed to improve the symptoms. (Tr. at 427-29.) On October 28, 2008, Dr. Hasan completed a PRT, wherein he concluded that Plaintiff's depression and anxiety were severe impairments, but were not expected to last twelve months. (Tr. 444-49.) On June 17, 2010, Dr. Hasan opined that Plaintiff had a poor ability to deal with the public and work stresses. (Tr. at 520-21.)

### 2. *Physical Impairments*

Plaintiff has a right knee impairment dating back to at least 2001. As noted by the Magistrate Judge, on August 21, 2001, an MRI of Plaintiff's right knee exposed a "small amount of fluid along the anterolateral aspect of the knee joint, degenerative changes along the lateral meniscus, and fatty changes involving the bones, but intact tendons and muscles and no meniscal tears." (Document 17 at 14) (citing (Tr. at 259.)) On November 19, 2007, Dr. Bellam diagnosed Plaintiff with hypertension, Type II diabetes, degenerative joint disease, and chronic anxiety. (Tr. at 332.) Dr. Bellam noted that Plaintiff had back pain, leg pain, swelling of the feet, and shortness of breath. (*Id*.) As noted by the Magistrate Judge, "[o]n January 30, 2008, Dr. James Egnor, M.D., a state agency reviewing physician, completed a form Physical Residual Functional Capacity Assessment ("Physical RFC"), on which he opined that [Plaintiff's] chronic pain, history of degenerative joint disease, diabetes, high blood pressure, high cholesterol, and Bell's Palsy limited her to performing light exertional work, with occasional postural limitations and an avoidance of extreme cold and vibration." (Document 17 at 15.) Dr. Amy Wirts, M.D., subsequently performed a Physical RFC. (Tr. at 399-406.) Dr. Wirts opined that Plaintiff's left knee strain and generative changes of the lateral meniscus, diabetes, hypertension, high

cholesterol, and Bell's Palsy limited her to performing light exertional work, with occasional postural limitations and an avoidance of extreme cold, vibration, and hazards. (Tr. at 399-406.)

On January 5, 2010, Dr. Michael A, Muscari, D.O., performed an x-ray of Plaintiff's right and left knees. Dr. Muscari noted that the x-ray of Plaintiff's right knee demonstrated "moderately severe degenerative narrowing of the medial femorotibial compartment with articular sclerosis and marginal osteophytes." (Tr. at 473.) The left knee x-ray showed moderate degenerative narrowing of the medial femorotibial compartment with articular sclerosis. (Id.)

On February 22, 2010, Dr. Robert McCleary, D.O., examined Plaintiff for complaints of bilateral knee osteoarthrosis. (Tr. at 493-494.) Plaintiff rated her pain as an eight on a scale of one to ten. (Tr. at 493.) Dr. McCleary diagnosed bilateral knee osteoarthrosis of the bilateral medial compartments, and injected 6 mg of Decadron and 2 ml of 2% lidocaine. (Tr. at 494.) Plaintiff had a follow up exam with Dr. McCleary on June 9, 2010. Dr. McCleary noted Plaintiff had full knee range of motion, mild ballotable patella and suprapatellar pouch effusion, and a continued amount of extreme pain over the medial joint space. (Tr. at 547.) Plaintiff rated her pain as a six on a scale of one to ten. (Tr. at 547.) Dr. McCleary again diagnosed bilateral knee osteoarthrosis and gave Plaintiff injections of 6 mg of Decadron and 2 ml of 2% lidocaine in each knee. (Id.) Additionally, he proscribed Plaintiff Lortab for pain. (Id.)

On November 3, 2010, Plaintiff reported her pain level as a seven on a scale of one to ten. Dr. McCleary gave Plaintiff 3 mg of Decadron and 1 ml of 2% lidocaine in each knee. (Tr. at 546.) Dr. McCleary indicated that "we will try to hold off on surgery, but if the next injection is not beneficial, I am recommending arthroscopy on the joints." (Id.) Dr. McCleary noted no changes in her knees since the February 22, 2010 visit. (Id.)

*C. Plaintiff and Defendant's Arguments for Judgment on the Pleadings*

Plaintiff argues the ALJ decision is not supported by substantial evidence because the ALJ erred in failing to find that she met the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05. (Document 10 at 9-14.) Plaintiff contends the ALJ erred finding that she did not suffer a listed impairment because Ms. Walker's reported IQ scores were invalid and her diagnosis included only a "rule out mild mental retardation." (*Id*. at 10-11.) Claimant contends that a diagnosis of mental retardation is not required to meet a listing and that Ms. Walker reported that the scores were valid. (*Id*. at 11.) Also, Plaintiff contends the ALJ erred in finding that her school records demonstrated a lack of special education classes and good grades in the fifth and sixth grades. (*Id*.) In essence, Plaintiff challenges the validity of the grades given. Plaintiff also argues substantial evidence does not support the decision she could perform unlimited standing and walking, despite her complaints of knee pain. (Document 10 at 14-19.)

The Defendant argues Plaintiff's IQ scores did not establish mental retardation and no mental health provider opined that she was mentally retarded, but rather only reported borderline intellectual functioning. (Document 11 at 13.) The Defendant also contends the record is clear that Plaintiff never participated in special education classes and performed well in fifth and sixth grades. (*Id*.) Also, the Defendant points out that Plaintiff obtained her driver's license by passing written and driving examinations and failed to have significant cognitive deficits on mental status examinations. (*Id*.)

Subsequent to the conclusion of briefing, Plaintiff submitted a Memorandum Regarding Supplemental Authority (Document 15), wherein she asks the Court to remand the matter to consider Dr. McCleary's treatment records from February 22, 2010 through November 3, 2010, which were submitted to the Appeals Council. Plaintiff argues that if her knee condition

precluded prolonged standing and walking, she would have been found disabled. Thus, Plaintiff asks for remand to the ALJ for analysis of her treating physician's records. In response, Defendant argues that Plaintiff waived this argument. Further, the Defendant argues evidence did not identify specific work-preclusive limitations and the evidence was neither new nor material. (Document 16 at 2.)

### D. *Magistrate Judge's PF&R and Plaintiff's Objections*

#### 1. *Listing 12.05*

The Magistrate Judge first considered Plaintiff's arguments with respect to the Listing of Impairments under Section 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. (Document 17 at 21.) Under Section 12.05, "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." (*Id*.) The required level of severity for mental retardation can be met by one of four requirements.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. The four requirements are as follows:

    A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

    Or

    B. A valid verbal, performance, or full scale IQ of 59 or less;

    Or

    B. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

    Or

      D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.

The Magistrate Judge, ALJ, and the parties agree that Plaintiff does not meet §§ 12.05A or 12.05D Listing. Thus, the ALJ focused on the absence of deficits in adaptive behavior and on the verbal, performance, and full scale IQ scores. The ALJ concluded that Plaintiff did not meet a § 12.05 Listing. (Tr. at 22-24.) The ALJ determined that the record did not establish an onset of the impairment prior to age 22, as required by the introductory language of § 12.05 because the ALJ found Plaintiff did not have a deficit in adaptive functioning prior to the age of 22. The Magistrate Judge concluded that the ALJ based this finding on Plaintiff's testimony that she was unsure whether she participated in special education classes in school, and her school records failed to indicate her participation in special education classes. The Magistrate Judge also pointed to the ALJ's reliance on Plaintiff's statements on a form that she could read and understand English, count change, pay bills, and use a checkbook and money orders. The Magistrate Judge agreed that a specific diagnosis of mental retardation is not required to meet or equal Listing 12.05, but the Magistrate Judge noted that Mr. McDaniel diagnosed Plaintiff with borderline intellectual functioning, and Ms. Walker ruled out mild mental retardation. Thus, the Magistrate Judge found Plaintiff "failed to establish deficits in adaptive functioning prior to the age of 22, and therefore, that the ALJ's decision in this regard is supported by substantial evidence." (Document 17 at 24.) The Magistrate Judge also found the ALJ erred in discounting Mr. McDaniel's and Ms. Walker's IQ scores, but found this error was harmless because Plaintiff

did not meet her burden to establish deficits of adaptive functioning prior to the age of 22 as required by the introductory language of Listing 12.05. (Document 17 at 26.)

Plaintiff objects to the finding that discounting Ms. Walker and Mr. McDaniel's reports was harmless. Plaintiff argues "[t]he Magistrate Judge did not address the reading scores determined by Ms. Sullivan Walker in her report. Ms. Sullivan Walker found that Mrs. Gibson read at a 2.4 grade level, spelled at a 2.3 grade level and performed math at a 2.2 grade level on a [WRAT4]." (Document 18 at 3-4.) Plaintiff argues "failure to achieve literacy despite formal schooling is 'a clear manifestation of mental retardation occurring before age 22.'" (*Id.* at 4.) (citing and quoting *Turner v. Bowen*, 856 F.2d 695, 699 (4th Cir. 1988)). Additionally, Plaintiff argues "evidence that an individual could barely read or write was a clear manifestation of mental retardation occurring before age 22." *Id.* (citing *Luckey v. U.S. Dep't of Health and Human Services*, 890 F.2d 666, 668-669 (4th Cir. 1989)). Plaintiff argues the ALJ and Magistrate Judge both should have considered Plaintiff's second grade reading ability despite attending school into the seventh grade in determining whether Plaintiff had significant deficits of adaptive functioning manifested prior to age 22. (*Id.*) Therefore, Plaintiff argues "this matter should at least be remanded to the Commissioner to reassess whether Mrs. Gibson meets the Listing of Impairments [in] §§ 12.05B or C." (*Id.*)

The Court agrees with the Magistrate Judge and the Plaintiff that the ALJ erred in discounting Mr. McDaniel's and Ms. Walker's IQ scores. Ms. Walker considered the IQ scores to be valid. The record does not contain information as to whether Mr. McDaniel considered the IQ scores to be valid or invalid. The ALJ failed to give any definitive reasoning for discounting the IQ scores obtained by Mr. McDaniel and Ms. Walker, other than the ALJ indicated she doubts that Plaintiff put forth effort because of Plaintiff's credibility and discrepancies in her

14

record and, thus, considered the scores to be invalid, although Ms. Walker considered the scores to be valid.

Still, the introductory paragraph of Listing 12.05 requires "a showing of deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" *Hancock v. Astrue,* 667 F.3d 470, ——, 2012 WL 19731, at *2 (4th Cir. 2012) (internal quotation marks omitted). The question before the Court is whether the ALJ's decision that Plaintiff did not have mental retardation with deficits in adaptive functioning which initially manifested during the developmental period (prior to age 22) is supported by substantial evidence. In support of the finding, the ALJ relied on Plaintiff's inconsistent testimony with respect to whether she participated in special education classes and the Plaintiff's school records that indicated Plaintiff had good grades in fifth and sixth grade prior to dropping out of school in seventh grade. (Tr. at 24.) Plaintiff indicated to Ms. Walker that she was in special education classes (Tr. 500), but her school records fail to show that she was in special education classes (Tr. 237). In fact, the Plaintiff's school records indicate she did well in fifth and sixth grade. Furthermore, in Plaintiff's application for benefits, she reported that she did not attend special education classes (Tr. 189). Additionally, the ALJ considered that Mr. McDaniel diagnosed Plaintiff with borderline intellectual function and Ms. Walker ruled out mild mental retardation.

"In the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant." *Luckey v. U.S. Dept. of Health & Human Services*, 890 F.2d 666, 668 (4th Cir. 1989)  Where there is no evidence that a claimant's IQ has changed and there is evidence that a claimant could barely read and write, then this could support "a clear manifestation' of mental retardation occurring before age twenty-

two." *Id.* 668-69. (citing and quoting *Turner v. Bowen*, 856 F.2d 695, 699 (4th Cir.1988). Here, there is no evidence that Plaintiff's IQ has changed. However, there is also no evidence that an IQ test was given to Plaintiff until she was an adult.

Deficits in adaptive functioning refer to "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404. supt. P, app. 1, § 12.00(C)(1). However, the evidence in the record indicates Plaintiff could wash her own clothes, prepare simple meals, count change, pay bills, use a checkbook, and "read a little bit." Further, the ALJ gives weight to Plaintiff's school records that indicate she was not in special education classes and performed well in fifth and sixth grades. Again, record evidence indicates Plaintiff obtained her driver's license through a written and driving exam. Moreover, Plaintiff's mental status examinations do not show any significant cognitive deficits. (Tr. 357, 408-09, 427-28, 475-76, 518-19, 594.) Based on the aforementioned evidence with respect to Plaintiff adaptive functioning, the Court finds the ALJ's decision that Plaintiff did not establish deficits in adaptive functioning initially manifesting during her developmental period is supported by substantial evidence. The Court notes that the ALJ appears to put little credibility in the Plaintiff's testimony because of her inconsistent reports to several treating physicians. Accordingly, the Court overrules Plaintiff's objection.

   2. *Knee Impairment and Evidence Submitted to the Appeals Council*

The Magistrate Judge found that the ALJ properly assessed Plaintiff's credibility concerning her knee pain and that evidence of record failed to establish any limitations not accounted for by the ALJ. (Document 17 at 28.) The Magistrate Judge found that the ALJ "properly relied on the opinions of the state agency reviewing physicians, Drs. Egnor and Wirts.

Plaintiff correctly points out that their opinions were rendered prior to the January, 2010, x-rays." (*Id*.) Finally, the Magistrate Judge found the ALJ properly considered Plaintiff's obesity in assessing her residual functional capacity. (*Id*.)

The Magistrate Judge next considered Plaintiff's argument that remand is required pursuant to the holding in *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), to determine whether Dr. McCleary's treatment notes reasonably would have resulted in a different decision by the ALJ. The Magistrate Judge distinguished the instant case from *Meyer*. In *Meyer*, the Fourth Circuit held that the Appeals Council is not required by the regulatory scheme to "articulate any findings when it considers new evidence and denies review . . . [.]" *Meyer*, 662 F.3d at 706. However, the Fourth Circuit noted that express analysis would be helpful for judicial review. *Id*. In *Meyer*, the claimant submitted new and material evidence from his treating physician which specifically described his back injury, surgery, and treatment, and, more importantly, set forth specific limitations resulting therefrom. *Id*. at 703-04. Because no fact finder had made any findings regarding the new and material evidence from the treating physician as it related to the conflicting evidence, the Fourth Circuit concluded remand was required for a fact finder to consider the probative value of competing evidence. The Magistrate Judge distinguished this case because Dr. McCleary's treatment notes did not establish or indicate any specific limitations from Plaintiff's knee impairments and Dr. McCleary only noted that surgery would be considered if the injection treatment was not beneficial when she returned in three months. (Document 17 at 29.) Additionally, the Magistrate Judge considered that Dr. McCleary's exam notes indicated Plaintiff had 4/5 muscle strength and full knee range of motion. The Magistrate Judge found that "the evidence, while it may have been new, is not material, as it reasonably would not have changed the ALJ's decision." (*Id*. at 30.)

In her objections, the Plaintiff argues the Court should remand this matter for further analysis of Dr. McCleary's notes by the Appeals Council or by an ALJ because, as in *Meyer*, the ALJ noted an evidentiary gap with respect to Plaintiff's arthritic knees. (Document 18 at 6.) Plaintiff points to ALJ's note that "[T]he records between 2008 and 2009 also fail to show significant findings concerning the claimant knees (sic), however, x-rays of the claimant's left and right knee dated January 5, 2010, showed degenerative joint disease primarily involving medial femorotibial compartments bilaterally and greater on the right." (Tr. 27). Plaintiff argues that the Magistrate Judge read *Meyer* too narrowly. Next, Plaintiff objects to the Magistrate Judge's finding that she "has not demonstrated good cause for her failure to submit the evidence to the ALJ prior to her decision."

For remand based on evidence submitted to the Appeals Council, Plaintiff has the burden of proving that the evidence was both new and material. *See Wilkins v. Secretary, Dept. of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991); *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985).[1] The Magistrate Judge appeared to assume the evidence was new, but found such evidence was not material. "Evidence is new within the meaning of this section if it is not duplicative or cumulative." *Wilkins*, 953 F.2d at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id*.

---

[1] "A reviewing court may remand a Social Security case to the Secretary on the basis of newly discovered evidence if four prerequisites are met. [1] The evidence must be "relevant to the determination of disability at the time the application was first filed and not merely cumulative." *Mitchell v. Schweiker,* 699 F .2d 185, 188 (4th Cir.1983). [2] It must be material to the extent that the Secretary's decision "might reasonably have been different" had the new evidence been before her. *King v. Califano,* 599 F.2d 597, 599 (4th Cir. 1979); *Sims v. Harris,* 631 F.2d 26, 28 (4th Cir. 1980). [3] There must be good cause for the claimant's failure to submit the evidence when the claim was before the Secretary, 42 U .S.C. § 405(g), and [4] the claimant must present to the remanding court "at least a general showing of the nature" of the new evidence. *King*. 599 F.2d at 599." *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)

The Court finds the evidence of Dr. McCleary's statement that Plaintiff may require future arthroscopy if the injections did not work is not material because this evidence alone would not reasonably have changed the ALJ's knee impairment limitation finding. The ALJ considered Dr. McCleary's February 22, 2010 diagnosis of bilateral knee osteoarthrosis of the bilateral medial compartments and the treatment rendered. (Tr. at 27.) Importantly, the "new" evidence from June 9, and November 3, 2010, shows that Dr. McCleary continued the same treatment and indicated that a review of the past medical records shows "no changes from 02/22/10." (Tr. 546.) Dr. McCleary only noted that surgery would be considered if the injection treatment was not beneficial when she returned in three months. The "new" evidence is not material because the ALJ would not have reasonably changed her mind since Dr. McCleary did not indicate any changes in Plaintiff's knee impairment after the February 22, 2010 appointment, which the ALJ considered. More importantly, Dr. McCleary did not note any physical limitations which might reasonably change the ALJ's finding that the Plaintiff could perform light work. Thus, the Court finds the "new" evidence is not material to support a remand because there is not a reasonable possibility that said evidence would have changed the outcome.[2]

## *CONCLUSION*

Thus, based on the foregoing findings, the Court does hereby **ORDER** that the Magistrate Judge's *Proposed Findings and Recommendation* (Document 17) be **ADOPTED**. The Court **ORDERS** that Plaintiff's *Motion for Judgment on the Pleadings* (Docket 10) be

---

[2] The Court notes that this evidence is also somewhat duplicative and cumulative to the extent that the treatment and diagnosis in the "new" evidence was essentially the same as the evidence considered by the ALJ, except for the suggestion that if the injections did not work Dr. McCleary would recommend arthroscopy.

**DENIED**, Defendant's *Motion for Judgment on the Pleadings* (Docket 11) be **GRANTED**, the ALJ's final decision be **AFFIRMED**, and this matter be **DISMISSED** from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTERED: September 11, 2012

*[signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA